1  **Meir J. Westreich [CSB 73133]**
   **Attorney at Law**
2  **221 East Walnut, Suite 200**
   **Pasadena, California 91101**
3  **626.676.3585**
   **meirjw@aol.com**
4
5  **Attorney for Plaintiff**
6
7
8                    UNITED STATES DISTRICT COURT
9                    CENTRAL DISTRICT OF CALIFORNIA
10
11 ANDERS KARLSSON; and          )  Case  No. 2:19-cv-08681
   KENNETH KARLSSON,             )
12                               )  COMPLAINT FOR UNLAWFUL
                 Plaintiffs,     )  RETALIATION [RIGHTS TO
13                               )  PETITION AND TO ACCESS
   v.                            )  FEDERAL FORUM]; UNLAWFUL
14                               )  DISCRIMINATION [UNRUH ACT];
   CONNIE JOSEPHINE              )  INTENTIONAL AND NEGLIGENT
15 TRONCALE; LEAGO LAW           )  INFLICTION OF EMOTIONAL
   GROUP, a California Professional ) DISTRESS; FOR DAMAGES; AND
16 Law Corporation; REGINA       )  FOR INJUNCTIVE AND
   LEAGO, in her individual      )  DECLARATORY RELIEF.
17 and official capacities,      )
                                 )  JURY DEMANDED
18                 Defendants.   )
                                 )
19 _____ )
20
                    **INTRODUCTION**
21
        This is a diversity and federal issue action by Plaintiffs stated in state
22
   [California] and federal [United States] constitutional  torts of unlawfully motivated
23
   retaliation for petitions in courts seeking redress of grievances and/or right to pursue
24
   same in federal forums; state [California] statutory torts of unlawful discrimination
25
   under the Unruh Act [Ca. Civil Code §51 *et seq.*] based on an arbitrary classification,
26
   i.e. exercise of aforementioned rights; a common law tort of intentional or negligent
27
   infliction of emotional distress; and a conspiracy by Defendants and others acting in
28

_____
                          COMPLAINT

1   concert with them, and/or acting at or under their direction, to inflict each of said torts.

2   In so doing, Defendants have inflicted substantial damage and injury, which will

3   persist indefinitely if not enjoined or otherwise corrected. Plaintiffs have been

4   damaged in excess of $75,000.

5       Accordingly, Plaintiffs allege for their Complaint:

6       **COMMON JURISDICTIONAL AND PARTY ALLEGATIONS**

7       1.   This is a diversity action at law and in equity to redress the unlawful

8   retaliatory, discriminatory and outrageous conduct torts by Defendants (a) Connie

9   Josephine Troncale, who is domiciled in California; and (b) Leago Law Group, a Law

10  Corporation licensed and operating in California and its lawyer principal and

11  President Regina "Gina" Leago, who is domiciled in California ["Leago Defendants"],

12  against Plaintiffs Anders Karlsson, who is domiciled in Arizona and Kenneth

13  Karlsson, who is domiciled in Sweden.  Plaintiffs also seek relief for Defendants'

14  interference with Plaintiffs' rights to access federal forums; and for Defendants'

15  aforementioned torts performed via interstate / federal telecommunication commerce

16  [internet; e-mail; telephone communications].

17      2.   The jurisdiction of this Court is invoked under 28 U.S.C. §1332, this being

18  an action between an Arizona Plaintiff and a Sweden Plaintiff, on the one hand, and

19  California Defendants, on the other hand; and under 28 U.S.C. §1331, there being

20  claims based on denial of federally secured rights and/or wrongs committed while

21  engaged in modes of interstate commerce .  The amount in controversy is in excess

22  of $75,000, exclusive of interest and costs.

23      3.   Venue is properly located in the Central District of California because the

24  claims in controversy were largely consummated in the Central District of California.

25      4.   Plaintiffs are ANDERS KARLSSON, who is domiciled in the State of

26  Arizona, and KENNETH KARLSSON, who is domiciled in Sweden.

27      5.   Defendant CONNIE JOSEPHINE TRONCALE is domiciled in California.

28

6. Leago Defendants are: (a) REGINA "GINA" LEAGO, who is domiciled in the State of California, and is President of Leago Law Group; and (b) LEAGO LAW GROUP a Professional Law Corporation licensed and doing business in California. At all relevant times herein Defendant Leago has been the sole officer, president and controlling owner, and *alter ego* of Defendant Leago Law Group [collectively "Leago Law Group"].

7. At all relevant times herein, the Leago Defendants are alter egos, inseparable in interest or conduct, as Defendant Leago has at all times owned 100% of Leago Law Group/ They have acted in concert with each other; has each been and is the agent of the other; each has held and holds the actual and apparent authority to speak and act on behalf of the other; and each has knowingly authorized and/or ratified the statements and/or acts of the other.

8. At all relevant times herein, Defendants have each been acting as, and in fact have been and are, agents of all other Defendants; and the Leago Defendants have been attorneys and agents for Defendant Troncale.

9. At all relevant times herein, the Leago Defendants were each engaged in the profession of the licensed practice of law, open to the public.

10. Plaintiff Anders Karlsson was born in Sweden, was raised in New York, and has resided during his adult years in California and Arizona. He has been since 2012, and currently is, domiciled in Arizona. Anders Karlsson has been mostly engaged in the mineral trade.

11. Plaintiff Kenneth Karlsson has at all times retained his domicile in Sweden, and is also in the mineral trade, generally operating his own businesses, but sometimes joining with his brother Anders Karlsson in specific ventures.

12. Defendants and each of them, in engaging and participating in the conduct and actions mentioned herein, conspired to do so and at least one act in furtherance was committed; and they acted in concert.

13. Defendants and each of them knew or reasonably should have known of the conduct and/or acts of other Defendants, and by their words, acts and/or omissions ratified same.

14. There were other material actors, whose identities are currently unknown to Plaintiffs, who participated in or aided in the conduct and/or acts of the Defendants, whose acts were authorized or ratified by one or more Defendants, who are therefore responsible the conduct and/or acts of those others.

15. Commencing on January 17, 2014, Plaintiff Anders Karlsson commenced a federal diversity action against several defendants, including Defendant herein Connie Troncale, United States District Court, Central District of California Case No. CV-14-00420 ["Troncale Action #1"], alleging *inter alia* a fraudulent Ponzi scheme in which Troncale was a material tortfeasor; and commencing in 2015 was represented therein by Defendant Leago, first as a member of a large firm, then commencing in March 2016 as a sole practitioner.

16. On July 13, 2018, a jury verdict in the amount of $400,000 was entered, with a finding of malice for a bifurcated punitive damages jury phase; and a reserved court trial for constructive trust [fraud]. The latter phases did not occur because (a) Leago Defendants filed sealed documents asserting illness of Defendant Troncale, resulting in continuance to at least October 15, 2018; and (b) to avoid the delay, Plaintiff Anders Karlsson waived those remaining phases. Thereafter, Leago Defendants filed a late motion for judgment notwithstanding the verdict, and a timely motion for new trial. The latter was granted on August 12, 2019, and a new trial on all the matters at issue for the first trial is now calendared for December 17, 2019.

### EXTORTION AND BLACKMAIL ALLEGATIONS
#### [Retaliation, Discrimination and Intentional Infliction Claims]
#### [Plaintiff Anders Karlsson; All Defendants]

17. Prior to trial, the best settlement offer of Defendant Troncale was $60,000, who also routinely claimed poverty and losses from the Ponzi scheme. Before and at

trial, Plaintiff Anders Karlsson established that Defendant Troncale held / holds substantial real estate assets and earned hundreds of thousands of dollars from the Ponzi scheme.

18. In an e-mailed settlement demand dated on or about September 9, 2018, the Leago Defendants demanded settlement in favor of Defendant Troncale in the sum of $68,000, and made threats that conveyed extortion / blackmail aimed at Anders Karlsson. Specifically, there was an apparent non-negotiable offer of $68,000, with an explicit threat to initiate "whistleblower claims" if Plaintiff Anders Karlsson did not accept within 48 hours.

19. In a subsequent substantive discussion, by associated counsel for Anders Karlsson with Defendant Leago on or about September 21, 2018, she made various ill-disguised threats to publicly impugn Anders Karlsson or report him to federal authorities as having engaged in unlawful acts, said threats ["Extortionate Actions"] made in substance as follows:

a. A settlement consideration from her client and her spouse was offered whereby they would not tarnish Anders Karlsson's name in the at world.

b. Defendant Leago threatened whistleblower cases seeking disgorgement of ill-gotten gains as a potential way of her client trying to recoup the hundreds of thousands of dollars that she had spent in the Karlsson [Troncale] lawsuit.

c. Defendant Leago referred to attorneys that work directly with the FTC that she was in touch with that are interested in hearing any information that would benefit apparent whistleblower claims.

d. Defendant Leago claimed to have volumes of information, which has not been disseminated, but was referenced by her in examining Anders Karlsson at trial, which he would rather keep  contained.

e.   Defendant Leago added that one way to keep the information contained is that in the agreement everyone buys their peace and Defendant Leago could turn over the information to Anders Karlsson.

f. Defendant Leago explained how the information has been put together by Defendant Leago, with back up, a timeline, and connecting the dots, with excruciating time and labor, which someone else could replicate only with no less than 60 days of intense work and money to collect that information along with backup, *i.e.* a room full of bankers' boxes and documents.

g. Defendant Leago added that if an agreement is reached on the other term [$68,000], then Defendant Leago could give Anders Karlsson the documents, organized the way she has organized them.

h. Ms. Leago claimed to have spoken to lawyers in New York that file civil lawsuits for whistleblower claims, and added that if these whistleblower claims are successful, they can get disgorgement from the parties that engaged in unlawful conduct and take the fees from that disgorgement, and this is something her client would be giving up in a settlement, *i.e.* Defendant. Leago will not pursue, or help someone else pursue, those claims.

i. Defendant Leago added that she and her client would agree not to disseminate any information to any party whether it be private or government, without a court order; they would not voluntarily go try to find law firms to pursue whistleblower claims, or knock on whatever government entities' doors; conversely, if they do not buy their peace, then they are going to pursue this.

j. Defendant Leago added that there is $500,000 of litigation fees and wrongdoing, so for Defendant Leago and her client not be incentivized to do the whistleblower claims, they instead buy their peace and they just agree not to pursue the whistleblower claims.

k. Defendant Leago said that she did not think she or her client can protect Anders Karlsson from whatever government is going to do from a criminal standpoint; and added that what Anders Karlsson wants protection from is Ms. Leago or her client knocking on doors, and, legitimate or not, she and her client then have

to answer questions; and she finally added that the way Anders Karlsson protects against this is with a settlement contract that says she and her client will not do it.

l.  Defendant Leago stated that the only way this information that Defendant Leago holds has value [which she is not saying it might have to any source civil or criminal], is the way it has been put together by Defendant Leago, and she cannot imagine any government entity that is going to listen to somebody if it is not backed up by documents.  She then added that Anders Karlsson would want as part of the settlement agreement is to get assurances that Defendant Leago will turn over any and all information.

m.  Defendant Leago offered a warranty and representation that there is one known copy and no other copy, and that she would have to turn that over if in fact the resolution is reached; and she has her skin in the game because she is the one, frankly, that put it together with her own free time, with much labor on her part, and it is a value to someone only if they get it in the way that she has it organized.

n.  Defendant Leago said she did not mean to infer in any way, in her email, that somehow she could protect Anders Karlsson, as she has no control over criminal, so there is nothing that she can do to help him otherwise, to protect him from a criminal investigation.

o.  Defendant Leago referenced *qui tam* cases [civil] where someone who sees that someone is violating medicare or some government entity, and they can pursue a civil claim, called "*qui tam*." It is essentially a whistleblower who brings that violation to light and is the nominal plaintiff in a civil lawsuit.  Then what the federal authorities do, she has no control over.

p.  Per Defendant Leago, the Anders Karlsson concern is that if he enters into this agreement, how does he know that, since the parties cannot include criminal in the agreement, that she an her client are no going to knock on governmental doors and give them a lot of information that could make them ask questions of Defendant Leago, and she then cannot control what the FBI or the DEA or the FTC, or any of

1  those entities, then do. She added that all she can do is tell Anders Karlsson that if

2  there is an agreement, she is not going to go to anybody and do that; that the motive

3  for anything like that to happen is to correct a wrong, so, as a practical reality, if a

4  resolution is reached, there is no longer a quote "wrong."

5          q.   Defendant Leago added that she had not told her client about her

6  discussion with me, and she is absolutely not going to do that only to be told that she

7  and her client then have to negotiate the settlement amount; so, if she is told by

8  Anders  Karlsson that the settlement amount [$68,000] is acceptable, assuming all

9  these other terms [above] can also be worked out, then she will go to them [her

10  clients].

11          r.   Defendant Leago repeated in closing that she is not doing any of it

12  [above], unless she hears that the number [$68,000] is acceptable, and she is not

13  spending her time negotiating terms [above] then have to turn around and negotiate

14  the numbers, *i.e.* was the number [$68,000] acceptable to Anders Karlsson.

15  20.  Plaintiff Anders Karlsson did not submit to this extortion / blackmail.  No

16  settlement was negotiated on these terms, nor any agreement reached.

17  21.  The Extortionate Actions were acts by Defendants, and each of them, in

18  unlawful retaliation for the exercise by Plaintiff Anders Karlsson of his constitutional

19  rights to petition for redress of grievances as secured by the California and United

20  States Constitutions, *i.e.* the fact, manner and content of his litigations against

21  Defendant Troncale and others, in that and in other litigations; and his invocation of

22  federal forums therefor.

23  22.  The Extortionate Actions were acts by Defendants, and each of them, of

24  intentional arbitrary discrimination based on the exercise by Plaintiff Anders Karlsson

25  of his constitutional rights to petition for redress of grievances as secured by the

26  California and United States Constitutions, *i.e.* the fact, manner and content of his

27  litigations against Defendant Troncale and others, in that and in other litigations; and

28  his invocation of federal forums therefor.

23.  Defendant Leago Law Group is a business and public accommodation as defined under the Unruh Act [Ca. Civil Code §51 *et seq*.] In the conduct and acts as alleged herein, the Leago Defendants intentionally discriminated against Anders Karlsson for exercising his constitutionally protected rights to litigate his claims against Defendant Troncale in federal civil courts.

24.  The conduct and/or acts of the Defendants, and each of them, was and is outrageous and caused severe emotional distress; they intended their conduct and acts; and they intended thereby to inflict severe emotional distress.

25.  The Extortionate Actions were effected via interstate telecommunications subject to exclusive federal [United States] authority,  jurisdiction, discretion and/or regulation, *i.e.* by the medium(s) of internet publication, e-mail and/or telephone communication.

26.  Each of the Defendants conspired with one another, and others, to effect each and all of the Extortionate Actions, and one or more of their unlawful purposes; at least one act in furtherance thereof was committed; and each Defendant, having knowledge – knew or reasonably should have known – thereof failed to take corrective or remedial actions.

27. Each of the Defendants participated in, caused or knowingly ratified the Extortionate Actions.

28.  Defendants have each acted with malice, and/or knowingly or recklessly ratified the acts of another Defendant, and hence Plaintiff Karlsson is entitled to punitive damages from each of them.

**DEFAMATION AND/OR PUBLICATION ALLEGATIONS**
**EXTORTION AND BLACKMAIL ALLEGATIONS**
**[Retaliation, Discrimination and Intentional Infliction Claims]**
**[Plaintiffs Anders Karlsson & Kenneth Karlsson; All Defendants]**

29.  As of October 8, 2018, there was a "Wordpress Site" titled: "Anders Karlsson – A site dedicated to the live of Anders H Karlsson" ["Wordpress Site"].

30.  In the link description, located below the Title and URL, before clicking on the site, was a mention of "Charles Lynn Simmons."  Once the link to open the site is clicked, the first entry was titled "The unsolved case of the murder of Charles Lynn Simmons and the possible involvement of Anders H Karlsson" with indicated dates of July 4-11, 2018 when it was posted in indicated stages.  Also referenced was Kenneth Karlsson.  The following entries on the site were articles about Anders Karlsson.

31.  As of the next day, October 9, 2018, after Danael Karlsson had viewed the Wordpress Site, the first entry: "The unsolved case of the murder of Charles Lynn Simmons and the possible involvement of Anders H Karlsson" had been removed, with the same indicated dates of July 4-11, 2018 when it was posted in indicated stages ["Revised Wordpress Site"].

32.  As of November 30, 2018, March 7, 2019 and September 18, 2019, this Revised Wordpress Site remained as previously reviewed on October 9, 2018.

33.  As of April 10, 2019, a weblink – https://goo.gl/m4arrJ – it directed readers to the Revised Wordepress Site.

34.  In addition to the Revised Wordpress Site listed on Google Search Site, there were additional search results linking to "Ripoff Report Site."  There are five (5) Ripoff Report Site entries, and each item contains an entry on "Anders Karlsson" and some have an entry referencing Kenneth Karlsson. As of October 8 & 9, 2018, there were the following Ripoff Report Site entries, entitled and dated as follows:

a. "02_03_2014 Ripoff Report _ Anders Karlsson, Karlsson Group Complaint Review  L.A. Calif. _ Phoenix Az., California" with saved date of October 8, 2018;

b. "02_05_2016 (One) Ripoff Report _ Anders Karlsson, Karlsson Group, Meir Westreich Complaint Review" with saved date of October 9, 2018;

c. "02_05_2016 (One) Ripoff Report _ Anders Karlsson, Karlsson Group, Meir Westreich Complaint Review" with saved date of October 9, 2018;

d. "06_29_2018 Ripoff Report _ Anders H Karlsson Complaint Review Scottsdale, Arizona" with saved date of October 9, 2018;

e. "07_05_2018 Ripoff Report _ Meir J. Westreich Complaint Review Pasadena, California" with saved date of October 9, 2018.

35.  As of November 30, 2018, March 7, 2019 and September 18, 2019, the Ripoff Report Sites remained as previously reviewed on October 9, 2018.

36.  In addition to the Revised Wordpress Site and Ripoff Blog Site listed on Google Search Site, there are additional search results linking to "Report Scam - Scamion" and "Scam Report - Scam.com" where there have been two (2) such site entries, one item containing an entry on "Karlsson Group, Inc." and another entry on "Anders Karlsson." On March 15, 2019.  The Report Scam / Scam Report Site entries are entitled and dated as follows:

a. "06_28_2018 Report Scam _ Scamion. The Karlsson Group, Inc." with saved date of March 15, 2019;

b. "06_29_2018 [updated 07.06.18] Scam Report - Scam.com. Anders Karlsson" with saved date of March 15, 2019.

37.  On July 12-13, 2018, Plaintiff Anders Karlsson received false and defamatory communications from and in connection with a phony personage, affecting connections with certain false and defamatory blog allegations which have been detailed above, and falsifying communications from the "FBI" ["Offending Communications"] as follows:

a. On July 12, 2018, at 10:29 a.m., Plaintiff Anders Karlsson received an e-mail to my current e-mail address [initiated in 2012] from a "thomoreilly@aol.com" and signed "J" who affected being someone known to Plaintiff Anders Karlsson, and referring to certain false and defamatory blog

allegations which have been detailed above; and claiming to have received a "call from an FBI agent asking me a lot of questions about simmons."

b. On July 12, 2018, at 12:49 p.m., Plaintiff Anders Karlsson  received another e-mail to his current e-mail address [initiated in 2012] from a "thomoreilly@aol.com" who affected being someone known to him, and again referring to certain false and defamatory blog allegations, with a reference to a weblink – https://goo.gl/m4arrJ –, which have been detailed above.

c. On July 13, 2018, shortly before 9:30 a.m., Plaintiff Anders Karlsson received a telephone call on his cell phone from a person claiming to be an "FBI agent"from the Phoenix, Arizona office, claiming to be investigating the matters referenced in the two preceding sections, and urging him to come in and discuss same. He did not identify himself by name or supply any callback number.

38.  Plaintiff Anders Karlsson did and does not know any "thom oreilly" or any derivation thereof; anyone who signs e-mails or other written communications as "J"; any FBI agent from Phoenix, Arizona; or about any of the matters referenced in the preceding Paragraph, which is an entire fabrication except identifying the name of his brother Kenneth Karlsson.

39.  Plaintiff Anders Karlsson referred the entire matter referenced in the preceding Paragraphs to his attorney, who verified that there were in fact no such mentioned contact(s) from the Phoenix, Arizona FBI Office.

40.  The dates of these Offending Blogs and Offending Communications respond to key dates in the Troncale Action #1; and their content corresponds with key allegations, contentions and arguments made by the Leago Defendants in the Troncale Action #1.   Based thereon, they infer the culpable participation of Defendants herein.

41.  Plaintiff Anders Karlsson is a founding shareholder and officer of The Karlsson Group, Inc. ["TKG"], an Arizona Corporation, incorporated in 2006, and remained in both capacities from then to the present [ever-shrinking minority

shareholder since 2008]. He is also a founding shareholder and officer of Karlsson Group, Inc. ["KG"], a Nevada Corporation, incorporated in 2005, and remained in both capacities from then to the present.

42. From March 2005 to the present, Plaintiff Anders Karlsson has held some form of title, directly or indirectly, by grant deed or recorded leasehold, to the Petrified Forest Ranch ["PFR"] in Northeastern Arizona and/or some form of title to mineral rights in PFR and surrounding properties, *e.g.* petrified wood, potash.

43. Competitors in Northeastern Arizona sought to prevent Anders Karlsson's acquisition of PFR, which resulted in multiple litigations which ended largely in success for him and his companies, and others who he was obliged to indemnify, including a civil judgment on the merits affirmed on appeal, and dismissed criminal prosecutions.

44. The only judgment against Plaintiff Anders Karlsson in those civil and criminal actions were a judgment of dismissal of an action to recover damages incurred in all of the failed actions against me or those he indemnified; and a civil restitution judgment of $12,500. At no time has there been any adjudication for fraud, or other act of dishonesty or moral turpitude, against him or any company owed or controlled by him.

45. In 2010 - 2013, TKG had a series of contracts with a group of companies loosely represented in an entity titled Prospect Global, Inc ["PG"], involving the potash deposits among the mineral rights owned by TKG in and around PFR.

46. After false and retaliatory allegations were made against Plaintiff Anders Karlsson, TKG, PG and associates of his, by a co-defendant Gene Ewing in the Troncale Action #1, which were posted in a "ripoff" blog in February 2014 ["Offending Blogs")], Plaintiff Anders Karlsson also investigated allegations in reference to PG.

47.   There is absolutely nothing that supports any allegation of fraud, dishonesty and/or illegality in any of the dealings between TKG and PG, or the PG capitalization thereof.

48.  In a series of art deals made in 2012 - 2013, Plaintiff Anders Karlsson was the object of major fraud.  In two cases, there is a criminal component along with broader civil disputes. Both criminal actions ended in conviction, including major restitution judgments; and a civil action dismissed on procedural grounds was reversed and remanded on appeal and is now pending.

49.   Another art fraud claim in the Troncale Action #1, against another defendant, was settled after locating conclusive proof of the fraud and the defendant's knowledge thereof.  The settlement included a public posting on the Offending Blogs, in August 2014, disavowing the prior allegations.

50.  Plaintiff Anders Karlsson has never been convicted of a non-traffic crime. The only time he was charged with an unlawful taking involved a technical dispute over the physical and legal boundary between surface and subsurface mineral rights, as regards petrified wood on one of the eight parcels in PFR, a 5000 acre ranch of which until recently he was a joint owner [now he own portions of the mineral estate], which action ended in unconditional dismissal.  Other than that, he has never been charged with criminal or civil fraud, or other act of dishonesty, or of any assault or battery, or any threat thereof, or any form of extortion, or any act of moral turpitude.

51.  Plaintiff Anders Karlsson has never been in the business, in any capacity and however briefly, of giving or making loans, or any other forms of lent capital.

52.   Plaintiff Anders Karlsson has never been in any proceeding seeking suspension or revocation of any license, professional or otherwise, or any such sanction, except some traffic offense issues with his California driver's license.

53. Plaintiff Anders Karlsson has never met or known Charles Lynn Simmons; and he, and the companies in which he has had any involvement, have never, directly

or indirectly, done business with him, or been involved in any capital transactions with him.

54.   Plaintiff Kenneth Karlsson has never met or known Charles Lynn Simmons; and he, and the companies in which he has any involvement, have never, directly or indirectly, done business with him, or been involved in any capital transactions with him.

55.   Statements in the Offending Blogs re Kenneth Karlsson are all materially false.

56.   Neither Plaintiff, or anyone associated with either of them, has ever been charged or investigated in connection with Charles Lynn Simmons.

57.   Plaintiff Anders Karlsson has never filed any federal legal proceeding of any kind in Alabama, nor in the Central District of California prior to January 2005.

58.   The confluence of events and communications in June - July & September - October 2018, as above described, lead to the inferences that Defendants herein are the source of and/or responsible for the Offending Blogs and Offending Communications.

59.   The Offending Blogs and Offending Communications were acts by Defendants, and each of them, in unlawful retaliation for the exercise by Plaintiff Anders Karlsson of his constitutional rights to petition for redress of grievances as secured by the California and United States Constitutions, *i.e.* the fact, manner and content of his litigations against Defendant Troncale and others, in that and in other litigations; and his invocation of federal forums therefor.

60.   The Offending Blogs and Offending Communications were acts by Defendants, and each of them, in unlawful retaliation for the exercise by Plaintiff Kenneth Karlsson of his right to associate with Plaintiff Anders Karlsson, and the fact thereof, as secured by the California and United States Constitutions.

61.   The Offending Blogs and Offending Communications were acts by Defendants, and each of them, of intentional arbitrary discrimination based on the

exercise by Plaintiff Anders Karlsson of his constitutional rights to petition for redress of grievances as secured by the California and United States Constitutions, *i.e.* the fact, manner and content of his litigations against Defendant Troncale and others, in that and in other litigations; and his invocation of federal forums therefor.

62.   The Offending Blogs and Offending Communications were acts by Defendants, and each of them, of intentional arbitrary discrimination based on the exercise by Plaintiff Kenneth Karlsson of his right to associate with Plaintiff Anders Karlsson, and the fact thereof, as secured by the California and United States Constitutions.

63.   Defendant Leago Law Group is a business and public accommodation as defined under the Unruh Act [Ca. Civil Code §51 *et seq.*] In the conduct and acts as alleged herein, the Leago Defendants intentionally discriminated against Anders Karlsson for exercising his constitutionally protected rights to litigate his claims against Defendant Troncale in federal civil courts.

64.   The conduct and/or acts of the Defendants, and each of them, was and is outrageous and caused severe emotional distress; they intended their conduct and acts; and they intended thereby to inflict severe emotional distress.

65.   The Offending Blogs and Offending Communications are and/or contain, in all material respects, statements that are false, *i.e.* factually incorrect, and defamatory; the false statements have been published on the internet and elsewhere and have caused injuries and damages suffered by Plaintiffs.

66.   Each of the Defendants conspired with one another, and others, to effect each and all of the Offending Blogs and Offending Communications, and one or more of their unlawful purposes; at least one act in furtherance thereof was committed; and each Defendant, having knowledge – knew or reasonably should have known – thereof failed to take corrective or remedial actions.

67.  The conduct and/or acts of the Defendants, and each of them, caused injury and damage to Plaintiffs' respective professional and business reputations; and to their respective business interests.

68.  The Offending Blogs and Offending Communications were effected via interstate telecommunications subject to exclusive federal [United States] authority, jurisdiction, discretion and/or regulation, *i.e.* by the medium(s) of internet publication, e-mail and/or telephone communication.

69. Each of the Defendants participated in, caused or knowingly ratified the Offending Blogs and/or Offending Communications.

70.  Defendants have each acted with malice, and/or knowingly or recklessly ratified the acts of another Defendant, and hence Plaintiffs are entitled to punitive damages from each of them

## ALLEGATIONS RE DAMAGES AND INJUNCTIVE RELIEF
### [Plaintiffs Anders Karlsson & Kenneth Karlsson; All Defendants]

71.  As a consequence of the statements, acts and/or omissions of the Defendants, and each of them, each Plaintiff has incurred monetary damages as above described, as well as other consequential damages caused by the acts and omissions of said Defendants, and each of them, in an amount, to be proved at trial, in excess of $1,000,000.

72. Plaintiff has incurred, and continues to incur,  substantial emotional distress from the tortious conduct of each Defendant, proximately caused by the acts and omissions of one or more of the Defendants, in an amount to be proved at trial.

73.  If not enjoined by this Court, or other affirmative remedial action is not ordered, Defendants and each of them will persist in their unlawful conduct and acts and Plaintiffs will be irreparably harmed thereby.

74.  Plaintiffs are likely to prevail on the merits at trial of the matters framed by this Complaint.

75.  The Defendants and each of them have unclean hands.

76. Any balance of equities and/or irreparable harm weighs substantially in favor of Plaintiffs and against the Defendants, jointly and severally.

77. Defendants will continue to engage in the aforementioned unlawful conduct– Offending Blogs, Offending Communications and Extortionate Actions – unless enjoined from doing so and/or commanded to do otherwise.

78. Plaintiffs are entitled to injunctive relief specifically enjoining the Offending Blogs, Offending Communications and/or Extortionate Actions or commanding affirmative remedies of same.

<strong>PRAYER</strong>

**WHEREFORE,** Plaintiffs seek judgment against Defendants, jointly and severally, for:

1. Compensatory damages, according to proof;

2. Special and actual damages, according to proof;

3. Consequential damages, according to proof;

4. Punitive damages, according to proof;

5. Preliminary and permanent injunctive relief enjoining the Offending Blogs, Offending Communications and Extortionate Actions, or commanding affirmative remedies of same;

6. Statutory attorney fees under the Unruh Act; and

7. For such further relief as the Court may deem necessary and proper.

Dated: October 11, 2019                    Respectfully submitted,

                                                           s/ Meir J. Westreich

                                                           _____
                                                           Meir J. Westreich
                                                           Attorney for Plaintiffs

Plaintiffs demand trial by jury.

Dated: October 11, 2019

                                                           s/ Meir J. Westreich

                                                           _____
                                                           Meir J. Westreich
                                                           Attorney for Plaintiffs

COMPLAINT